UNITED STATES DISTRICT COURT
DISTRICT OF HAWAI'I

| | |
|---|---|
| STEVE ALLAN BURTON and YASUKO HIRATA BURTON,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and CHRISTOPHER ROBINSON, HONOLULU FIELD OFFICE DIRECTOR OF USCIS,<br><br>Defendants. | Civil No. 1:18-cv-00269 DKW-RT<br><br>**ORDER DENYING APPEAL** |

The Burtons appeal the Board of Immigration Appeals' ("BIA") March 21, 2018 decision to deny their challenge of the U.S. Citizenship and Immigration Service's ("USCIS's") denial of an I-130 Visa Petition that Steve filed on behalf of his wife, Yasuko.[1] Dkt. No. 16 at 2.[2] For the reasons set forth below, the Court finds that the BIA did not abuse its discretion in denying the Burtons' challenge. Accordingly, Plaintiffs' appeal is DENIED.

---

[1] For clarity and ease of reference, when referring to Plaintiffs individually, the Court uses each Plaintiff's first name.
[2] Pinpoint docket citations reference the Page ID# at the top right of the document header.

# **RELEVANT BACKGROUND**

The Burtons met in Waikiki in April 2003 and developed a personal relationship that has been ongoing for more than 15 years. Dkt. No. 12 at 3. Steve is a United States citizen, while Yasuko is a national of Japan who entered the United States on October 21, 2011 under an M-1 non-immigrant student visa that authorized her stay for a year. Dkt. No. 16 at 8. Yasuko exceeded her authorized stay and "remained in the United States without legal status" by failing to continue to attend school. She was arrested by Immigration and Customs Enforcement ("ICE") on March 21, 2014. Dkt. No. 12 at 72. A month later, on April 21, 2014, ICE placed Yasuko in removal proceedings. *Id*. at 122. On the same day, the Burtons married, registering their marriage in Honolulu two days later. *Id*. at 150, 173.

On July 25, 2014, Steve filed an I-130, Petition for Alien Relative (the Petition), on Yasuko's behalf under Section 201(b)(2) of the Immigration and Nationality Act (INA), 8 U.S.C. §1151(b)(2). Section 201(b), among other things, accords "immediate relative status to aliens who are the spouse of United States citizens, thus exempting those persons from the restrictions for visa quotas." Dkt. No. 12 at 71. In filing the Petition then, Steve sought a visa exemption for Yasuko by having her classified as the wife of a U.S. citizen. In support of the Petition, Steve submitted evidence designed to prove the existence of a bona fide marriage.

On September 11, 2015, the Field Office Director of the USCIS denied the Petition, finding that "the beneficiary [Yasuko] is not clearly eligible for classification under . . . [the provision for petitions for relatives] and [Plaintiffs] failed to establish eligibility for an exemption from the general prohibition against approval of a visa petition filed while in [removal] proceedings." Dkt. No. 12 at 73. In reaching this decision, the Field Office Director considered the timing of the evidence submitted and found that all the evidence purporting to show the existence of a bona fide marriage was "dated after [the] marriage" and "there was really no commitment [to marry] between [Plaintiffs] until 2014 when [Yasuko] was placed in removal proceedings." *Id*. The Field Office Director also found, based on sworn statements taken from Plaintiffs in their separate March 3, 2015 interviews, that Plaintiffs "married because of [Yasuko's] immigration issues." *Id*. Those statements along with "all the affidavits and letters submitted were determined as not being convincing to establish eligibility [for the exemption]." *Id*.

On October 6, 2015, Plaintiffs appealed the Field Office Director's decision to the BIA. Dkt. No. 17 at 3. The BIA reviewed the decision de novo. *Id*.; *see* 8 C.F.R. §1003.1(d)(3)(iii). On May 21, 2018, the BIA dismissed the appeal. In doing so, the BIA determined that Plaintiffs "ha[d] not established by clear and convincing evidence that [their] marriage [was] bona fide." Dkt. No. 12 at 43.

3

The BIA examined the 16 photographs and eight affidavits submitted by the Burtons.  The BIA determined, without explanation, that the "16 photos submitted by the [Plaintiffs] have limited probative value."  Dkt. No. 12 at 43.  The BIA also determined that "the eight affidavits of the family members and friends of the [Plaintiffs] have probative value; however, such value is limited because the affidavits include few details about the relationship of the [Plaintiffs]."  *Id*.  Importantly, the BIA concluded that there was a "dearth of documentation demonstrating that the [Burtons] ha[d] a joint life."  *Id.* at 44.  The BIA found this especially significant given that Plaintiffs had "testified at their [2015] interviews that they have been together since 2003."  *Id*.  Further, notwithstanding Steve's inability to marry Yasuko until the 2009 divorce from his then-spouse was finalized, the evidence failed to "explain why [Plaintiffs] did not marry for the subsequent 5 years and does not explain the lack of evidence of a shared life, such as evidence of commingled finances."  *Id*.  Accordingly, the BIA found that "Plaintiffs submitted insufficient evidence to establish that [their] marriage was entered into in good faith and not for the purpose of procuring the beneficiary's admission as an immigrant."  *Id*.

Plaintiffs now appeal the BIA's decision upholding the Field Office Director's denial of Steve's I-130 petition.  Dkt. No. 16 at 2.  The government filed

an opposition (Dkt. No. 17), to which Plaintiffs did not reply.  On June 17, 2019, the Court heard oral argument.  Dkt. No. 19.  This disposition follows.

## LEGAL STANDARDS

A district court may only set aside a decision by the BIA that the court finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. §706(2)(A); *Konstantinova v. INS*, 195 F.3d 528, 529 (9th Cir. 1999).  Abuse of discretion may occur, for instance, when the agency fails to make an individualized determination, fails to consider all relevant factors, or considers irrelevant factors.  *Virks v. INS*, 295 F.3d 1055, 1060 (9th Cir. 2002); *Gonzales-Batoon v. INS*, 791 F.2d 681, 685 (9th Cir. 1986).  The district court must consider the complete administrative record on which the BIA based the challenged decision to determine if an abuse of discretion has occurred.  *See Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010).

## DISCUSSION

Plaintiffs seek to overturn the BIA's denial of an appeal from the Field Office Director's decision denying Plaintiffs' Petition.  Dkt. No. 16 at 2.  The government argues that USCIS and the BIA did not abuse their discretion in denying Plaintiffs' I-130 Petition because Plaintiffs "failed to present clear and convincing evidence that they entered into a bona fide marriage."  Dkt. No. 17 at 10.  Because the BIA did not abuse its discretion in denying Plaintiffs' appeal, and

the administrative record is insufficient to show by clear and convincing evidence that Plaintiffs entered into a bona fide marriage, Plaintiffs' appeal is DENIED.

When an alien marries after being placed in removal proceedings, the immigration regulations prohibit granting a spousal visa exemption, except in limited circumstances. 8 C.F.R. §204.2(a)(1)(iii). One such circumstance is where a petitioner shows[3] that the marriage is bona fide. *Id.* A marriage is bona fide only where the petitioner shows by clear and convincing evidence – generally including the submission of specific documentary evidence – that the marriage was entered into in good faith and not for the purpose of procuring the beneficiary's admission as an immigrant. *See* 8 U.S.C. § 1255(e)(3); 8 C.F.R. § 204.2(a)(1)(iii)(B).

The Burtons principally assert three reasons why Defendants abused their discretion in denying the Petition: (1) Defendants applied the wrong standard to evaluate whether the marriage was bona fide; (2) Defendants used the wrong definition of "clear and convincing" when evaluating the record; and (3) the evidence before Defendants clearly demonstrated a bona fide marriage. Dkt. No. 16 at 21, 24, 28. The Court addresses each assertion in turn.

\\\

\\\

---

[3]It has long been true that, in visa petition proceedings, the petitioner bears the burden of showing that the beneficiary is eligible for the benefit sought. *Matter of Brantigan*, 11 I. & N. Dec. 493 (BIA 1966).

I.  *Evaluating a Bona Fide Marriage*

Relying on *Bark v. INS,* 511 F.2d 1200 (9th Cir. 1975*)*, Plaintiffs argue that Defendants failed to apply the proper test for a bona fide marriage by failing to determine whether the Burtons intended to establish a life together *at the time of the marriage*. Dkt. No. 16, at 21-22. According to the Burtons, Defendants considered only whether there was evidence of a joint life *prior to* the marriage and evidence of an intent to marry *prior to* the initiation of removal proceedings.

Plaintiffs misapply *Bark.* In *Bark,* the court closely examined whether the petitioner and his wife intended to establish a life together at the time of marriage *because they separated shortly after getting married*. 511 F.2d at 1201 (emphasis added). The petitioner and his wife had been sweethearts in their native Korea for several years and, after separately moving to the United States and renewing their acquaintance in Hawaii, were married. Petitioner's wife then filed a petition to qualify the petitioner for status as the spouse of a resident alien pursuant to 8 U.S.C. §§1153(a)(2), 1154. Petitioner and his wife separated shortly after the marriage. Thus, the court in *Bark* was uniquely focused on the question of the intent of the petitioner and his wife at the time of marriage but only because they had subsequently separated; the existence of a prior existing romantic relationship was not in doubt.

7

The *Bark* court's statement concerning the need to inquire into intent *at the time of marriage* must be considered in the context of the court's rejection of the Agency's decision to treat the petitioners' subsequent separation as proof positive that the marriage was not bona fide. Indeed, what the court objected to in *Bark* was that the Agency had concluded that the marriage "was a sham" based "primarily (perhaps solely), on the evidence of [the petitioners' subsequent] separation." 511 F.2d at 1202. *Bark* rejected the notion that the subsequent outcome of a marriage necessarily undermined the legitimacy of the marriage. In so holding, the court stated, "evidence that the parties separated after their wedding is relevant in ascertaining whether they intended to establish a life together when they exchanged marriage vows." *Id.* But "evidence of separation, standing alone, cannot support a finding that a marriage was not bona fide when it was entered." *Id.* Thus, rather than defining a bona fide marriage, *Bark* merely explained the parameters of evaluating whether a marriage was entered into in good faith when presented with a subsequent marital dissolution.

Here, it is undisputed that Plaintiffs did not marry until after Yasuko had been arrested and placed in USCIS removal proceedings. It is this timing of the marriage *after* arrest by immigration authorities that triggers a regulatory presumption that the marriage was other than bona fide, a factual scenario that did not exist in *Bark*.

8

8 C.F.R. §204.2(a)(1)(iii)(B) explains further: evidence that demonstrates a bona fide marriage includes, (1) "[d]ocumentation showing joint ownership of property, (2) [l]ease showing joint tenancy of a common residence; (3) [d]ocumentation showing commingling of financial resources; . . . (5) [a]ffidavits of third parties . . . contain[ing] complete information and details explaining how the person acquired his or her knowledge of the marriage; and (6) [a]ny other documentation which is relevant to establish that the marriage was not entered into in order to evade the immigration laws of the United States." For the evidence to be probative of the motivation for marriage, these documents must relate to events and information prior to the marriage and removal proceedings. *Sharma v. Holder*, 633 F.3d 865, 872 (9th Cir. 2011). For instance, the *Sharma* court found that, although the couple presented evidence of a marriage ceremony and evidence of a post-marriage joint life, their evidence did not show "commingling of lives before their marriage." *Id.* at 873. That proved fatal to their pending petition. *Id.*

As discussed further below, this is precisely the process employed by both USCIS and the BIA in the instant case. Reviewing officials examined all of the evidence submitted by the Burtons with a particular focus, as commanded by the Ninth Circuit in *Sharma*, on the Burtons' pre-marriage relationship. Officials did not, as in *Bark*, focus on any single determinative fact in reaching their respective

9

decisions. Under these circumstances, this Court ascribes no error to the review process employed below.

II. *Assessing the Evidence*

Plaintiffs further argue that the BIA abused its discretion by: (1) applying the wrong definition of the "clear and convincing" standard to the evidence presented, and (2) "by unfairly picking and selecting elements of the evidence which supports their position and summarily dismissing the majority of Plaintiffs' evidence as not meeting their standard of proof." Dkt. No. 16 at 26. Neither argument is supported by the facts or law.

First, there is no single definition of "clear and convincing" evidence in the case law. Here, USCIS adopted the definition from *Matter of Patel*, 19 I. & N. Dec. 774, 783 (BIA 1988), which defined "clear and convincing" as "that degree of proof . . . which will produce in the mind of the court a firm belief or conviction, or as that degree of proof which is more than a preponderance but less than beyond a reasonable doubt." Dkt. No. 12 at 43. In *Sharma* and *Malhi v. INS*, 336 F.3d 989, 994 (9th Cir. 2003), the Ninth Circuit offers a nuance, requiring evidence showing "a strong likelihood that the [petitioner's] marriage is bona fide." 633 F.3d at 873. Plaintiffs claim the correct definition is "evidence that leaves you with a firm conviction that it is highly probable that factual contentions of the claim or defense are true." *Sophanthavong v. Palmateer*, 378 F.3d 866 (9th Cir.

2004). Apparently, the Ninth Circuit has not decided upon a single definition of "clear and convincing evidence." Accordingly, USCIS and the BIA could not have abused their discretion simply by applying one of the Ninth Circuit's definitions with which the Plaintiffs disagree. Moreover, the nuances are distinctions without a substantive difference. As shown below, the outcome of the USCIS and BIA review would have been no different even had Plaintiffs' definition been utilized.

Second, Plaintiffs appear to argue that Defendants unfairly cherry-picked evidence to support the outcome. No one disputes that the BIA must "support its conclusions with reasoned explanations." *Ayala-Chavez v. INS*, F.2d 906, 908 (9th Cir. 1991). However, there is ample indication that the Field Office Director and the BIA did just that. Immigration officials did not rest their decisions solely on one or two pieces of evidence submitted by Plaintiffs and, rather, considered the entire record, as they are required to do. For example, because the regulations demand that third-party affidavits "contain complete information and details" of the marital relationship, and the basis for knowing of that relationship, the BIA found the probative value of the eight affidavits submitted by the Burtons to be limited because they "include[d] few details about the relationship of the [Plaintiffs]." 8 C.F.R. §204.2(a)(1)(iii)(B)(5); Dkt. No. 12 at 43. The 16 photographs submitted by Plaintiffs similarly fell short. The BIA determined that the "16 photos submitted by the [Plaintiffs] have limited probative value," likely

11

because photographs do not generally depict intent. *Id.* Further, the BIA considered evidence of a joint checking account but stated there was "no evidence that that account ha[d] ever been used." *Id*. The BIA also considered "a copy of a lease for an apartment" for Plaintiffs, but because that lease did not begin until December 2014, many months after Plaintiffs' marriage and after the initiation of Yasuko's removal proceedings, the lease was anything but persuasive. In sum, after reviewing the Burtons' evidence, the BIA found that "[t]he dearth of documentation demonstrating that the [Plaintiffs] have a joint life is especially significant given that [Plaintiffs] testified at their interview that they have been together since 2003." *Id*.

Similarly, in the report denying the I-130 petition, the USCIS Director considered all the evidence submitted, listing each piece of evidence reviewed. The report notes, the "affidavits and letters submitted were determined as not being convincing to establish eligibility" because they lacked detailed information of Plaintiffs' relationship. Dkt. No. 12 at 72. Further, 8 C.F.R. §204.2(a)(1)(iii)(B)(5) requires affiants to have "knowledge of the bona fides of the marital relationship." It states, "the affidavit[s] must contain complete information and details explaining how the person acquired his or her knowledge of the marriage." *Id*. However, USCIS determined that the Burtons' affiants failed to offer such detail, instead opting for generalities and conclusions. For example,

12

the affiants simply mention there was a "closeness" between Plaintiffs and that they were "good companions" for each other.[4]  Dkt. No. 12 at 109, 111.

Additionally, Plaintiffs failed to attach any documentary evidence of the sort suggested by the immigration regulations: "affidavits should be supported, if possible, by one or more types of documentary evidence listed in this paragraph." 8 C.F.R. §204.2(a)(1)(iii)(B)(5).  The "documentary evidence" are those types listed above under 8 C.F.R. §204.2(a)(1)(iii)(B)(1-3, 5-6).  The regulations make clear that the documentary evidence "is relevant to establish that the marriage was not entered into in order to evade the immigration laws of the United States."  *Id*.

The USCIS Director's report also relies on Yasuko's candid 2015 interview.  In that interview, Yasuko admitted "[Plaintiffs] married because of her immigration issues."  Dkt. No. 12 at 72.  The Director also considered Yasuko's statement that "she married [Steve after being allegedly involved with him since 2003] because it was the right time."  The Director interpreted that comment as consistent with the marriage being driven by Yasuko's removal proceedings.  *Id.*

Accordingly, the USCIS Director found that "after reviewing [Plaintiffs'] file, [including] the sworn statements taken from [Plaintiffs], the documents submitted . . . [by Plaintiffs] fail[] to establish eligibility for an exemption from the

---

[4]While undoubtedly relevant, being close companions does not establish an intent to marry or to live a joint life.

general prohibition against approval of the visa petition." Dkt. No. 12 at 72. These findings regarding the probative value of the affidavits, the photographs, and the other documents submitted by Plaintiffs, as well as the discussion of Plaintiffs' interview testimony, indicate that the USCIS Director and the BIA evaluated and made findings as to all of Plaintiffs' evidence, not some cherry-picked subset claimed by the Burtons.

Based on a review of the administrative record, including the evidence submitted by Plaintiffs, the Agency's report of its decision, and the BIA's appellate ruling, this Court finds that the USCIS Director and the BIA did not abuse their discretion in denying Plaintiffs' I-130 Petition.

III. *Marriage for Immigration Benefits*

Plaintiffs arguably assert one additional (fourth) contention: Relying on the Ninth Circuit's decision in *United States v. Orellana-Blanco,* Plaintiffs argue that "[m]erely because Plaintiffs wanted to secure permanent residency for Plaintiff Yasuko Burton does not make the relationship a sham . . . for immigration purposes." 294 F.3d 1143, 1151 (9th Cir. 2002); Dkt. No. 16 at 25.

In *Orellana-Blanco*, the Ninth Circuit considered whether improper admission of evidence in a criminal trial could be treated as harmless error where the improperly admitted evidence undermined the defendant's primary defense to the charged marriage fraud: that, although he had married for the purposes of

obtaining a green card, he had married with the intent to establish a life with his wife. ." 294 F.3d 1143, 1151 (9th Cir. 2002). In holding that the admission of the damning evidence was not harmless, the court acknowledged defendants' chosen defense: "an intent to obtain something other than love . . . does not make the marriage a sham. . . . Rather, the sham arises from the intent not to establish a life together." *Id.* In short, the Ninth Circuit held that a marriage *could* have been entered into for the purposes of obtaining residency and still not be a sham marriage if the parties intended to establish a life together.

*Orellana-Blanco*, however, does nothing to disturb the BIA's decision here. First, the BIA did not find that *because* the Burtons had married at least in part to obtain a visa exemption, the marriage was therefore a fraud. Rather, the BIA found that the Burtons' visa motivation was *evidence* that supported the presumption that the marriage was a fraud. The Court in *Orellana-Blanco* explicitly allowed for such reasoning: "that Orellana-Blanco married [his wife] so that he could get a green card does not make the marriage a sham, *though it is evidence that might support an inference of a sham marriage.*" 294 F.3d at 1151 (emphasis added). Thus, the Agency's consideration of the motivation underlying the marriage as *evidence* of Plaintiffs' intent was consistent with *Orellana-Blanco* and not an abuse of discretion.

15

Second, *Orellana-Blanco* considered how the government could prove marriage fraud in the criminal context where a *presumption of innocence* attaches. The court there considered whether *Orellana-Blanco's* admission that he had married in order to obtain a visa but with the intent to establish a life with his wife, was a possible defense to the charge of marriage fraud. Here, the Director and the BIA are tasked with determining whether Plaintiffs have overcome a *presumption of fraud* such that they should be granted an exemption to an otherwise prohibited immigration benefit (the granting of a spousal visa where the marriage occurred after initiation of removal proceedings). *See* 8 C.F.R. §204.2(a)(1)(iii). Because Plaintiffs are seeking an exemption from a regulatory prohibition in order to obtain an affirmative benefit under visa regulations, rather than defending against the specific intent element of a charged crime, it is Plaintiffs' burden to satisfy the requirements of the exemption. Here, that burden requires them to overcome a presumption of fraud. The fact that Plaintiffs were motivated to marry for visa benefits is evidence that supports the presumption of fraud and undermines the likelihood that their marriage is bona fide. The USCIS Director and the BIA did not err in relying on the fact of Plaintiffs admitted marriage motivation as some evidence that the marriage was fraudulent. *Orellana-Blanco* is not to the contrary.

\\\

\\\

## CONCLUSION

For the foregoing reasons, Plaintiffs' appeal of the BIA's March 21, 2018 decision is DENIED.

IT IS SO ORDERED.

Dated: July 10, 2019 at Honolulu, Hawaiʻi.

Derrick K. Watson
United States District Judge

---

*Steve Allan Burton, et al. v. United States of America, et al*.; Civil No. 18-00269 DKW-RT; **ORDER DENYING APPEAL**